**No. 51471.**—Protests 109836–K, etc., of Spanish American Trading Co. (Galveston).

KEEFE, Judge: The merchandise in question consists of distilled spirits imported from Mexico. It is claimed that certain of the 1-gallon glass demijohns of rum and various glass bottles containing vodka, whisky, and gin were never imported into the United States, and also that there were breakages of demijohns and of glass bottles resulting in the loss of the foregoing liquors. Consequently, the collector's assessment of duty and the levy of internal revenue taxes upon the entered quantities constituted illegal exactions.

At the trial it was established through the testimony of the discharging inspector that when the rum was delivered to the warehouse, it was in a freight car under customs seal; that the inspector broke the seal and discharged the cargo from the car into the bonded warehouse, at that time finding 51 demijohns of rum broken and empty; and that the broken glass was thrown on a rubbish pile. Reports of the discharging inspector at Laredo disclosed that 44 demijohns of rum were broken and empty when the freight car arrived at the port of Laredo. The breakage of the 51 demijohns was also reported by the discharging inspector at Galveston on January 13, 1944. The discharging inspectors also reported certain breakages of vodka, whisky, and gin. The affidavits certifying the discharging inspectors' reports of breakage, filed May 22, 1944, were admittedly not filed within the time prescribed under the provisions of paragraph 813, as amended by T. D. 49646, after delivery of the merchandise to the warehouse. However, through an arrangement with the collector at the time of withdrawal of the liquors, transportation thereof under customs supervision to the importer's place of business was effected. There, in the presence of the customs inspector, internal revenue stamps known as strip stamps were attached to each bottle. When attaching the stamps, the importer's shipping clerk took note of the shortages and breakages in each of the cases containing bottles of liquor and drew the

attention of the customs inspector thereto. From the memoranda so made, admitted in evidence herein, the importer filed the affidavits of breakage which were subsequently rejected by the collector.

It is the importer's contention that the delivery under customs supervision and the strip stamping of the bottles is the "delivery" mentioned in paragraph 813, from which time the importer has 15 days in which to file the required affidavits. It is further contended that for all intents and purposes the merchandise is still in bonded warehouse until after the strip stamps are attached and that the internal revenue taxes should be levied upon the contents released from warehouse rather than upon the entered contents, because the importer was denied an opportunity of verifying the contents at the time the merchandise was entered or withdrawn from warehouse.

It is further contended that refund of duties should be made upon 32 demijohns of rum which were broken before entering warehouse; that said demijohns were found to be broken when application was made to destroy 755 demijohns still remaining in warehouse; and that only 672 demijohns were destroyed, although duties and internal revenue taxes were assessed upon 755 demijohns of rum.

Counsel for the Government conceded that the 51 demijohns of rum were broken and empty at the time the freight car was opened, and that they never entered warehouse. There is no evidence whatever before the court concerning the claim that 32 demijohns were broken before entry into warehouse or were not destroyed under customs supervision.

Paragraph 813, Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, provides that no allowance for breakage, leakage, or damage will be granted—

* * * except that when it shall appear to the collector of customs from the gauger's return, verified by an affidavit by the importer to be filed within fifteen days after the delivery of the merchandise, that a cask or package has been broken or otherwise injured in transit from a foreign port and as a result thereof a part of its contents, amounting to 10 per centum or more of the total value of the contents of the said cask or package in its condition as exported, has been lost * * *

In order to obtain an allowance in duties for breakage, leakage, or damage the importer is required, under the provisions of paragraph 813, as amended, to file an affidavit verifying the gauger's report showing the particulars of the breakage in each cask or package. Such affidavit is necessary so as to establish that 10 percent or more of the total value of the contents of the particular package has been lost. The statute requires that in order to receive such allowance the affidavit must be filed within 15 days after the delivery of the merchandise.

The "delivery" referred to, respecting warehouse goods, has been held to be a delivery to the warehouse, and the time begins to run from the completion of the examination of the shipment by the discharging inspectors. Therefore, affidavits which are filed more than 15 days after the discharging inspectors have completed their examinations, under the law, are not timely. See *Schenley Import Corp.* v. *United States*, 4 Cust. Ct. 154, C. D. 310.

The affidavits before us in this case, therefore, are not filed within the prescribed time. They are not in verification of any finding of a gauger. The breakage in each individual case of liquor is not particularized so as to show whether or not 10 percent or more of the total value of the contents was lost, and therefore the affidavits are not in the required form. See *Gandolfi* v. *United States*, T. D. 37175; and *Park & Tilford Corp.* v. *United States*, 26 C. C. P. A. 342, C. A. D. 38. We are constrained to hold, therefore, that not only are the affidavits untimely, but they are not in the form required by law. Consequently, no relief from the payment of duties upon the contents of the broken bottles can be given.

As to the assessment of internal revenue taxes upon the liquors in bottles, there is nothing before us to establish that upon withdrawal an application was made under the provisions of article 16.5 (d), Customs Regulations of 1943, for a regauge of the liquors for internal revenue purposes. It is provided in said article that unless an application for regauge is made, the internal revenue taxes shall be levied upon the basis of the entered gauge. The plaintiff here has failed to establish that the quantities of liquor in the packages withdrawn from warehouse were other than the entered quantities. We therefore are constrained to hold that the entered quantities are the legal basis for assessment of the internal revenue taxes.

The evidence before us fails to establish the existence of a nonimportation of any of the demijohns of rum or cases of vodka contained in the shipment. True, the customs inspectors' reports disclose that 51 demijohns of rum were broken at the time of discharge of the cargo at the warehouse in Galveston and that 49 demijohns were broken at the time the shipment was unladen at Laredo, the latter report also noting that in 1 case of vodka, 8 bottles were broken and only 2 bottles were full, and in another case, 2 bottles were broken and 10 bottles were full. Such reports, however, are not evidence of nonimportation but rather breakage, leakage, or damage for which Congress has provided that no allowance shall be made, constructive or otherwise, except when affidavits are filed in accordance with the provisions of paragraph 813, *supra*. The situation arising in the instant case is distinguished from that prevailing in the case of *United States* v. *Somerset Importers, Ltd.*, 33 C. C. P. A. (Customs) 138, C. A. D. 328, inasmuch as there the importer filed the required affidavit within the prescribed time after delivery of the merchandise to the warehouse and after completion of the examination by the discharging inspectors.

For the reasons stated, judgment will be entered in favor of the Government.